# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

December 13, 2019

**BY ECF**

Hon. Sanket J. Bulsara, U.S.M.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     *Re:*  ***Lopez-Pavon v. Fallsburg Bagels LLC, et al.***
         ***Case No. 18-CV-2566 (SJB)***

Dear Judge Bulsara,

  We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I. *The Need for the Court's Approval of the Agreement*

  As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Sanket J. Bulsara, U.S.M.J.
December 13, 2019
Page 2

## II.    *Plaintiffs' Claim for Unpaid Wages*

Ronald Lopez-Pavon ("Lopez") and Williams Castillo Lantigua ("Lantigua") (collectively, the "Plaintiffs") are former employees of the defendants' restaurant. Plaintiffs assert causes of action for, *inter alia*, unpaid overtime compensation pursuant to the FLSA and New York Labor Law.

Plaintiffs allege that they were employed in non-exempt employees assigned to work as counter-persons, where they were assigned to perform various tasks, including but not limited to: taking and preparing customer orders, cooking and preparing food, making coffee, serving customers, washing dishes, and cleaning the restaurant.

Plaintiff, Lopez, alleges working for the defendants between February 2010 until on or about March 26, 2018. Since the beginning of the relevant six-year period in May 2012, he contends working between fifty-six and sixty-six hours per week (depending on the season).

With respect to his pay, Lopez contends that he was paid on a salary basis straight time for all hours worked as follows:

- May 2012 – March 2013: $1,000/week
- April 2013 – August 2013: $1,050/week
- September 2013 – August 2016: $1,100/week
- September 2016 – March 26, 2018: $1,200/week

As for Plaintiff, Lantigua, he alleges working for the defendants between October 2016 until in or about June 2018. He contends working between fifty-six and sixty-six hours per week (depending on the season).

With respect to his pay, Lantigua was paid on an hourly basis straight time for all hours worked as follows:

- October 2016 – March 2018: $12/hour
- April 2018 – June 2018: $13/hour

Plaintiffs contend that the defendants failed to pay them at the rate of time and one-half for all hours worked in excess of forty (40) each week, and also failed to pay them a "spread of hours" premium of one (1) additional hour at the statutory minimum wage rate for each shift that exceeded ten (10) hours.[1]

---

[1] Plaintiff, Lantigua, also asserts a small minimum wage claim for the first few months of 2018 when the minimum wage was increased to $13 per hour.

### III. The Alleged Facts Contested by Defendants

In connection, with Plaintiff Lantigua, the parties are in general agreement concerning his work hours and rate and method of payment. Plaintiffs calculated that he is owed approximately $12,000 in underlying wages with an equal amount in liquidated damages.

The critical factual dispute in this matter, relates to whether Plaintiff Lopez was a manager of the restaurant and, thus, exempt from receiving overtime. Plaintiff Lopez, of course, maintains that he is not exempt. According to Plaintiff Lopez plaintiff he never had the authority to hire and fire employees (or recommend hiring and firing employees), which is a mandatory requirement for an employee to be considered an exempt manager. Moreover, Plaintiff Lopez maintains that he never supervised any other employees. Plaintiff Lopez alleges that his "primary duty" was performing the duties described above as a counter-person, and not the management of the restaurant. Plaintiff Lopez does not believe that the defendants would have been able to meet their burden on this issue.

In stark contrast, it is the defendants' position that Plaintiff Lopez was the manager of the restaurant. According to the defendants, Plaintiff Lopez was paid on a salary basis over $1,000 per week, which is in excess of 50% above what than the defendants' hourly-paid employees earned, and was the only worker who spoke English fluently, making him the restaurant's principal spokesperson with customers among the counter employees. Defendants also contend that Plaintiff Lopez was directly responsible for such things as recommending the retention or firing of employees; training employees; directing the work of employees; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; and apportioning the work among the employees. Thus, the defendants believe that Plaintiff Lopez falls squarely within both the salary test and duties test of the executive exemption of the FLSA and, therefore, is not entitled to any damages whatsoever.

Because no demonstrative evidence exists either way, the exemption issue would have had to have been resolved by a trier of fact based entirely on the testimonial evidence of the parties and eyewitnesses. Consequently, this posed a significant litigation risk for both parties. Plaintiffs calculated that Lopez is entitled to approximately $350,000 in unpaid overtime compensation, with an equal amount in liquidated damages. Of course, had the defendants prevailed in proving that Plaintiff Lopez was a manager, it would have entirely extinguished Plaintiff Lopez's claims.

### IV. The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $200,000.00 to resolve all of Plaintiffs' wage and hour claims against the defendants, payable in full on or before January 31, 2020 or within fourteen days of the Court approving the agreement and dismissing this case with prejudice, whichever occurs later.

As set forth in the Agreement, after the deduction for attorneys' fees, Plaintiff, Lopez, will receive $108,340.00, and Plaintiff, Lantigua, will receive $25,000.00.

### V. The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiffs' claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions over the course of one and one-half of years of litigation. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013.

In light of the various disputes concerning Plaintiffs' claims, as discussed above, this settlement should be approved. By settling now, Plaintiffs receive a significant amount of their underlying wages even after attorneys' fees are deducted, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with Plaintiffs, they made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with Plaintiffs, our firm will retain one-third of net proceeds of the settlement after expenses are deducted. In an effort to aid in settlement, Plaintiffs' counsel have agreed to waive its costs and expenses.

Counsel seeks one-third of the gross settlement in fees – *i.e.*, $66,660.00, which is approximate with the firm's lodestar. Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not

adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, Plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming Plaintiffs prevailed, Plaintiffs' counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts, including this Court, have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Yunda v. SAFI-G, Inc.*, No. 15 Civ. 8861 (HBP), 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. Apr. 28, 2017) (approving a percentage fee one-third of settlement amount in FLSA settlement as "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Romero v. ABCZ Corp.*, 14 Civ. 3653 (HBP), 2017 U.S. Dist. LEXIS 90137 (S.D.N.Y. June 12, 2017) (same); *Aquino v. Fort Washington Auto Body Corp.*, No. 16 Civ. 390 (HBP), 2017 U.S. Dist. LEXIS 78344 (S.D.N.Y. May 23, 2017) (same); *Velasquez v. Little Mex. Wholesale, Inc.*, No. 15 Civ. 5818 (HBP), 2016 U.S. Dist. LEXIS 157210 (S.D.N.Y. Nov. 14, 2016) (same); *Garcia v. YSH Green Corp.*, No. 16 Civ. 532 (HBP), 2016 U.S. Dist. LEXIS 158001 (S.D.N.Y. Nov. 14, 2016) (same); *Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement).

A contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, Plaintiffs agreed to a one-third contingency retainer agreement with counsel in connection with their wage-and-hour claims.

Had we deducted costs and expenses, and requested one-third of the net settlement, the firm would have received more than the $66,660.00 currently being requested.

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted

Hon. Sanket J. Bulsara, U.S.M.J.
December 13, 2019
Page 6

simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

    We thank the Court for considering this application.

Respectfully submitted,

*Justin Cilenti*

cc: Dennis A. Lalli, Esq. (by ECF)